| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND, ss | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO: |

STARR SURPLUS LINES INSURANCE )
COMPANY, AS SUBROGEE TO )
ADVANCEPIERRE FOODS, INC. )
)
    Plaintiff, )
)         **COMPLAINT AND**
vs. )         **REQUEST FOR JURY TRIAL**
)
MOUNTAIRE FARMS, INC. )
)
    Defendants and, )
)
ADVANCEPIERRE FOODS, INC., )
)
    Party-in-Interest )

NOW COMES the Plaintiff, Starr Surplus Insurance Company ("Starr"), by and through undersigned counsel, and complains against the Defendant, Mountaire Farms, Inc. ("Mountaire"), as follows:

## FACTS

1. Plaintiff Starr is and at all relevant times has been a corporation duly organized under the laws of the State of Illinois with its principal place of business in New York.

2. Defendant Mountaire is and at all relevant has been a corporation duly organized under the laws of the State of Delaware with its principal place of business in North Carolina.

3. AdvancePierre Foods, Inc. ("AdvancePierre") is and at all relevant times has been a national supplier of value-added proteins and sandwich products to foodservice, retail, schools, and convenience channels. AdvancePierre is named as a party-in-interest, and Starr is not seeking any relief against AdvancePierre in this action.

1

4. At all relevant times, AdvancePierre operated a production facility in Portland, Maine, also known as known as Barber Foods (the "Portland facility").

5. At all relevant times, AdvancePierre used raw chicken parts at its Portland facility to create frozen raw chicken dishes for retail consumption.

6. At all relevant times, every source of raw material entering AdvancePierre's Portland facility was logged into a computer system and assigned a unique lot number along with the date, time of receipt, supplier information and purchase order, among other details. These raw source materials were then issued specific production runs tied to the unique lot number and to a specific job. The finished products also had a unique lot number assigned through the computer system, allowing for a rapid trace and the ability of AdvancePierre to specifically identify the suppliers of all ingredients of their finished products.

7. On or about December 22, 2014, Mountaire entered into a contract (the "Contract") with AdvancePierre to deliver raw chicken parts to the Portland facility throughout 2015.

8. In early 2015, AdvancePierre purchased shipments of raw chicken parts from Mountaire pursuant to the Contract.

9. In or about February 2015, Mountaire shipped approximately 120,000 pounds of fresh boneless chicken breasts to AdvancePierre's production facility in Portland, Maine pursuant to terms of three separate purchase orders, numbered 723842, 720919, and 724781.

10. The raw chicken products that Mountaire sold to AdvancePierre on or about February 2015 were contaminated with *Salmonella Enteritidis* at the time of delivery to AdvancePierre.

11. The raw chicken products that Mountaire sold to AdvancePierre on or about

2

February 2015 contained pathogens unwholesome and otherwise unfit for human food, resulting in human illness as set forth below. Therefore, these raw chicken products were adulterated.

12. AdvancePierre used the raw chicken purchased from Mountaire, which was contaminated with *Salmonella Enteritidis*, in or about February 2015, to produce raw Chicken Kiev, Chicken Cordon Bleu, Broccoli Cheese, and other value-added proteins, at the Portland facility, that were to be sold in foodservice, retail, schools, and convenience channels.

13. After February 2015, clusters of individuals in Minnesota and Wisconsin became infected with *Salmonella Enteritidis*. These clusters were reported to the United States Food Safety Inspection Service ("FSIS") on or about June 24, 2015.

14. Through genetic testing, the FSIS identified PFG pattern combinations (JEGX01.0004/JEGA26.0203 or JEGX01.0253/JEGA26.0203) in all of six of the patients initially infected with *Salmonella Enteritidis* in Wisconsin and Minnesota. These genetic pattern combinations were unique and new to the CDC Pulse Net Database, and enabled the FSIS to link the illnesses directly to products produced at AdvancePierre.

15. A public health alert was issued by the FSIS on July 1, 2015.

16. After analysis of the epidemiological evidence and trace back investigations by the FSIS, on July 2, 2015, AdvancePierre initiated a recall for Salmonellosis (FSIS RC-96-2015) with respect to approximately 58,320 pounds of frozen, raw, and stuffed chicken items produced on specific dates in 2015.

17. Additional retail testing by the Minnesota Department of Agriculture also revealed *Salmonella Enteritidis* in Chicken Kiev, Chicken Cordon Bleu, and Broccoli Cheese products produced by AdvancePierre.

18. AdvancePierre worked in conjunction with the USDA, CDC, and the Minnesota State Department of Health and Agriculture, after learning of two additional illnesses in which the same source of raw material was used in different production lots.

19. Upon receipt of this new information and at the insistence of FSIS, AdvancePierre expanded the scope of the recall on July 12, 2015 to include all production associated with a specific whole muscle raw material processed in the Portland facility on nine production dates between February 2015 and May 2015. These products had been shipped to retail locations nationwide. This recall (the "Recall") eventually included 1,707,494 pounds of product.

20. As a result of the Recall, AdvancePierre sustained losses well in excess of $10 million dollars, including but not limited to return and destruction of the recalled chicken products, lost sales opportunities, loss of business, and loss of customers.

21. AdvancePierre used its computer system to trace the source of the *Salmonella Enteritidis* outbreak and the subsequent Recall to two truckloads of adulterated raw chicken parts, contaminated with *Salmonella Enteritidis*, which had been purchased from Mountaire in February of 2015.

22. Starr issued Starr Response Product Contamination Policy No. SLSLCRM82021215 to AdvancePierre for the policy period June 22, 2015 to June 22, 2016 (the "Policy"). Among other things, the Policy provided that "[i]n the event of payment under the Policy, [Starr] will be subrogated to the extent of such payment to all [AdvancePierre's] rights of recovery."

23. AdvancePierre submitted a claim to Starr under the Policy for the losses it sustained in connection with the Recall.

4

24. After investigating the matter, including conducting a forensic accounting, Starr determined that AdvancePierre had suffered a loss under the Policy and issued payment of its entire policy limit of $10 million to AdvancePierre pursuant to the terms of the Policy.

25. Pursuant to the Policy and applicable law, Starr is subrogated to all claims AdvancePierre has against Mountaire in connection with the Recall.

26. As set forth below, Starr, as subrogee, seeks the payment of all amounts it paid to AdvancePierre in connection with the Recall from Mountaire, up to the $10 million Starr has paid to AdvancePierre as a result of the Recall, plus such interest, costs, fees and attorneys' fees as the Court deems appropriate.

## COUNT I
### (Breach of Implied Warranty of Merchantability – 11 M.R.S.A. § 2-314)

27. Plaintiff Starr repeats and incorporates herein by this reference paragraphs 1 through 26 as if fully set forth herein.

28. At all relevant times, Mountaire was a merchant with respect to the raw chicken products it sold.

29. At or before the time it entered the Contract with AdvancePierre, Mountaire was aware that AdvancePierre intended to incorporate the raw chicken products it purchased into its own raw chicken food products, which AdvancePierre intended to sell its customers. Mountaire was aware that such frozen food products eventually would be sold to – and consumed by – the public.

30. Accordingly, there existed an implied warranty from Mountaire that the raw chicken products it sold to AdvancePierre would be fit and safe for the ordinary purposes for which such goods are used.

31. AdvancePierre relied upon Mountaire to provide unadulterated raw chicken products.

32. AdvancePierre purchased raw chicken products from Mountaire.

33. Mountaire breached its implied warranty of merchantability as the raw chicken products it provided to AdvancePierre contained pathogens including *Salmonella Enteritidis*, which caused human illness as discussed above, and therefore these products were adulterated, within the meaning of 9 CFR 381.1(b)(iii).

34. As a direct and proximate result of Mountaire's breach of the implied warranty of merchantability, AdvancePierre was forced to initiate the Recall, and thereby suffered damages in excess of $10 million dollars.

35. Starr was contractually obligated to indemnify AdvancePierre for monetary damages it incurred as a result of the Recall, per the terms of the Policy.

36. Starr paid its entire policy limits of $10 million to AdvancePierre in connection with the Recall.

Wherefore, Starr, as subrogee, seeks the payment of all amounts it paid to AdvancePierre in connection with the Recall from Mountaire plus such interest, costs, fees and attorneys' fees as the Court deems appropriate.

## COUNT II
### (Breach of Implied Warranty of Fitness for a Particular Purpose – 11 M.R.S.A. § 2-315)

37. Plaintiff Starr repeats and incorporates herein by this reference paragraphs 1 through 36 as if fully set forth herein.

38. At all relevant times, Mountaire was a merchant with respect to the raw chicken products it sold.

39. At or before the time it entered the Contract with Mountaire, AdvancePierre made known to Mountaire and Mountaire was aware that AdvancePierre intended to incorporate the raw chicken products it purchased into its own raw chicken food products, which it intended to sell to its customers. Mountaire was aware that such frozen food products eventually would be sold to – and consumed by – the public.

40. Accordingly, there existed an implied warranty from Mountaire that the raw chicken products it sold to AdvancePierre would be fit and safe for the ordinary purposes for which such goods are used.

41. AdvancePierre relied upon Mountaire's skill and judgment as a seller of raw chicken products to provide unadulterated products fit and safe for their ordinary purposes and which would not case human illness.

42. AdvancePierre purchased raw chicken products from Mountaire and used the raw chicken products for the particular purpose which it made known to Mountaire. Specifically, AdvancePierre used the raw chicken from Mountaire in its own raw chicken products that it sold to customers and which, in turn, were ultimately sold to the public.

43. Mountaire breached its implied warranty of fitness for a particular purpose as the raw chicken products it provided to AdvancePierre contained pathogens including *Salmonella Enteritidis*, which caused human illness, and were unwholesome and otherwise unfit for human food, and therefore these were adulterated, within the meaning of 9 CFR 381.1(b)(iii).

44. As a direct and proximate result of Mountaire's breach of the implied warranty of fitness for a particular purpose AdvancePierre was forced to initiate the Recall, and thereby suffered damages in excess of $10 million dollars.

45. Mountaire has failed to compensate AdvancePierre for such damages.

46. Starr was contractually obligated to indemnify AdvancePierre for monetary damages it incurred as a result of the Recall, per the terms of the Policy.

47. Starr paid its entire policy limits of $10 million to AdvancePierre in connection with the Recall.

Wherefore, Starr, as subrogee, seeks the payment of all amounts it paid to AdvancePierre in connection with the Recall from Mountaire plus such interest, costs, fees, and attorneys' fees as the court deems appropriate.

## COUNT III
### (Strict Liability – 14 M.R.S.A. § 221)

48. Plaintiff Starr repeats and incorporates herein by this reference paragraphs 1 through 47 as if fully set forth herein.

49. At all relevant times, Mountaire was a merchant with respect to the raw chicken products it sold.

50. At or before the time it entered the Contract with AdvancePierre, Mountaire was aware that AdvancePierre intended to incorporate the raw chicken products it purchased into its own raw chicken food products, which AdvancePierre intended to sell its customers. Mountaire was aware that such products would in turn be sold to – and consumed by – the public.

51. Mountaire sold raw chicken products to AdvancePierre in a defective condition that was unreasonably dangerous in a way not contemplated or expected by users and consumers because the raw chicken products contained pathogens including *Salmonella Enteritidis*, which caused human illness as discussed above, and were therefore adulterated, within the meaning of 9 CFR 381.1(b)(iii).

8

52. As a direct and proximate result of Mountaire's sale of defective and unreasonably dangerous raw chicken products, AdvancePierre was forced to initiate the Recall, and thereby suffered damages in excess of $10 million.

53. Mountaire has failed to compensate AdvancePierre for such damages.

54. Starr was contractually obligated to indemnify AdvancePierre for monetary damages it incurred as a result of the Recall, per the terms of the Policy.

55. Starr paid its entire policy limits of $10 million to AdvancePierre in connection with the Recall.

Wherefore, Starr, as subrogee, seeks the payment of all amounts it paid to AdvancePierre in connection with the Recall from Mountaire plus such interest, costs, fees and attorneys' fees, as the court deems appropriate.

### Jury Demand

Plaintiff Starr Surplus Lines Insurance Company hereby requests a jury on all counts of the Complaint against the Defendant Mountaire Farms, Inc. as set forth herein.

Dated at Portland, Maine, this 25th day of January, 2018.

Paul C. Catsos, Esq. Bar No. 6885
Elizabeth Knox Peck, Esq. Bar No. 3890
Attorneys for Plaintiff,
Starr Surplus Lines Insurance Company

THOMPSON BOWIE & HATCH, LLC
415 Congress Street
P. O. Box 4630
Portland, ME 04112
(207) 774-2500

```
CT SOP CUSTOMER SERVICE          1.0 LBS    LTR       1 OF 1
2149323601
CT - MINNESOTA SOP TEAM
6815 SAUKVIEW DR
SAINT CLOUD MN 56303

SHIP TO:
    JANICE ATTERBERRY
    5013998814
    MOUNTAIRE CORPORATION
    1901 NAPA VALLEY DR
    LITTLE ROCK  AR 72212
```

    AR 722 9-87



**UPS NEXT DAY AIR**    **1**

TRACKING #: 1Z X21 278 01 0518 0773



BILLING: P/P
DESC: SOP Documents

Reference No.1: SOP/2401130/532713310/CT SOP Custo

XOL 18.01.35    NV45 97.0A 01/2018

# CT Packing Slip

**CT Corporation**

**UPS Tracking # :** 1ZX212780105180773
**Created By :** Lechelle Worsham
**Created On :** 02/02/2018 04:37 PM
**Recipient :**

> **JANICE ATTERBERRY**
>
> Title : --
> Customer : Mountaire Corporation
> Address : 1901 Napa Valley Dr
> Email : jatterberry@mountaire.com
> Phone : 501-399-8814   Fax : 501-399-8814

**Package Type :** Envelope
**Items shipped :** 1

| Log # | Case # | Entity Name |
|---|---|---|
| 532713310 | CV201841 | MOUNTAIRE FARMS INC. |